| |
|---|
| **Rivera v Orr Cab Corp.** |
| 2023 NY Slip Op 34571(U) |
| December 29, 2023 |
| Supreme Court, Kings County |
| Docket Number: Index No. 509870/2019 |
| Judge: Debra Silber |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS : PART 9**

_____

|  |  |
|---|---|
| **MARIA RIVERA,** | **DECISION / ORDER** |
| **Plaintiff,** | **Index No. 509870/2019** |
| -against- | **Motion Seq. No. 2** |
| **ORR CAB CORP. and SHAHID BUTT,** | |
| **Defendants.** | |

_____

_**Recitation, as required by CPLR 2219(a), of the papers considered in the review of defendants'**_
_**motion for summary judgment.**_

| Papers | NYSCEF Doc. |
|---|---|
| Notice of Motion, Affirmation and Exhibits Annexed.................... | 23-31 |
| Affirmation in Opposition and Exhibits........................................ | 36-55 |
| Reply Affirmation................................................................ | |

**Upon the foregoing cited papers, the Decision/Order on this motion is as**

**follows:**

This is a personal injury action arising out of a motor vehicle accident that occurred

on June 15, 2016. At the time of the accident, the plaintiff was driving her own vehicle and

defendant Butt was driving a vehicle owned by co-defendant Orr Cab Corp., when they

came into contact with each other on the Belt Parkway, in Brooklyn, New York.

The defendants timely move for summary judgment dismissing the plaintiff's

complaint, pursuant to CPLR Rule 3212, on the ground that plaintiff did not sustain a

"serious injury" as defined by Insurance Law § 5102 (d).

Plaintiff's bill of particulars alleges that she sustained injuries to her left shoulder,

cervical spine, and lumbar spine as a result of the accident. At the time of the accident,

plaintiff was forty-one years old. Plaintiff testified that she was transported by ambulance

from the scene of the accident to the Lutheran Hospital (now NYU) emergency room.

[* 1]

The defendants provide, in support of their motion, affirmed reports from an orthopedist and a radiologist, the plaintiff's EBT transcript, plaintiff's bill of particulars, the pleadings, and an affirmation of counsel.

Jeffrey Guttman, M.D., an orthopedist, examined plaintiff on March 3, 2022, five years and eight months after the accident. He provides an affirmed IME report [Doc 29] that states that he only reviewed plaintiff's bill of particulars because no other "legally authenticated medical records were available for review".

In his report, Dr. Guttman states that he conducted range of motion tests on the parts of the body that the plaintiff claims were injured in the subject accident. In his examination of the plaintiff's cervical spine, thoracic spine, lumbosacral spine, and left shoulder, he reports that he found that the plaintiff had normal ranges of motion in all planes, when compared to "normals". Dr. Guttman's opinion is that plaintiff's "alleged" injuries to her cervical spine, thoracic spine, lumbar spine, and left shoulder have all "resolved." He further opines that "there is no evidence of disability or permanent injury. The claimant can perform activities of daily living and work duties without restrictions. All orthopedic testing was negative. There were no muscle spasms or trigger points and reflexes, muscle strength, sensation and muscle tone were all normal. There is no need for any further diagnostic testing, orthopedic or physical therapy treatment."

Jessica Berkowitz, M.D., a radiologist, provides an affirmed IME report [Doc 30] that states that she reviewed the MRIs of the plaintiff's cervical and lumbar spine. In her report, Dr. Berkowitz's impression of the MRI of the plaintiff's cervical spine is "Minimal disc bulge, C4-5. Small broad-based right central disc herniation and associated spondylosis impinging on the spinal cord, C5-6. Disc bulge and spondylosis impinging on the spinal cord, C6-7." She then opines that "[d]isc bulges and spondylosis are chronic and

[* 2]

degenerative in origin. The presence of spondylosis confirms the chronic nature of the disc herniation at C5-6. There is no evidence of acute traumatic injury to the cervical spine such as vertebral fracture, asymmetry of the disc spaces, spinal cord contusion or epidural hematoma." She concludes her review of the cervical MRI by opining that "[e]valuation of this MRI examination reveals no causal relationship between the claimant's alleged accident and the findings on the MRI examination."

Dr. Berkowitz's impression of the MRI of the plaintiff's lumbar spine is "[d]isc bulge, spondylosis and mainly right-sided hypertrophic facet joint changes impinging on the right neural foramen, L4-5. Disc bulge, spondylosis, and hypertrophic facet joint changes, L5-S1." She then opines that "[d]isc bulges, spondylosis, and hypertrophic facet joint changes are chronic and degenerative in origin. There is no evidence of acute traumatic injury to the lumbar spine such as vertebral fracture, asymmetry of the disc spaces, ligamentous rupture, or epidural hematoma." She concludes her review of the plaintiff's lumbar spine MRI by opining that "[e]valuation of this MRI examination reveals no causal relationship between the claimant's alleged accident and the findings on the MRI examination."

The moving defendants contend that their medical evidence, combined with plaintiff's testimony at her EBT, eliminates all categories of injury in the statute. Plaintiff testified at her EBT, held on May 12, 2021, that she was a teacher on the date of the accident, and that she did not miss any time from her job as a result of the subject accident [Doc 31, pp 15, 57].

The court finds that defendants have made a *prima facie* showing of their entitlement to summary judgment (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345 [2002]; *Gaddy v Eyler*, 79 NY2d 955, 956-957 [1992]). The affirmed report of the orthopedist, who examined the plaintiff, and the report of the radiologist, who reviewed the plaintiff's MRI films, indicate

[* 3]

that she did not sustain a serious injury as a result of the subject accident. Further, plaintiff's testimony that she missed no time from work makes a prima facie showing on the 90/180-day category of injury (*see Dacosta v Gibbs*, 139 AD3d 487, 488 [1st Dept 2016] ["Plaintiff's testimony indicating that she missed less than 90 days of work in the 180 days immediately following the accident and otherwise worked "light duty" is fatal to her 90/180–day claim"]; *Strenk v Rodas*, 111 AD3d 920 [2d Dept 2013] [plaintiff returned to work on a partial basis during the relevant period of time ]; *Hamilton v Rouse*, 46 AD3d 514, 516 [2d Dept 2007] ["The plaintiff testified at trial that he missed only one month of work, that he then returned to work on a part-time basis, and that, after another month, he had resumed working on a full-time basis"]). The reports of doctors Guttman and Berkowitz also make a prima facie showing with regard to the other categories of injury claimed by the plaintiff in her bill of particulars. The burden of proof then shifts to plaintiff.

Plaintiff contends that the medical evidence she has submitted overcomes the motion and raises a triable issue of fact as to whether she sustained a serious injury under Insurance Law § 5102(d).

The plaintiff opposes the motion with an attorney's affirmation and memorandum of law, an affidavit from the plaintiff, an affirmed report and records from Dr. Daniel Wilen, plaintiff's treating orthopedist, affirmed MRI reports from Dr. David Payne, the radiologist who originally interpreted the plaintiff's MRI studies, a certified hospital record from Lutheran Medical Center, affirmed reports from Dr. Thomas Mathew, plaintiff's treating physical medicine and rehabilitation doctor, various physical therapy records from DHD Medical and Back to Health Physical Therapy that were not submitted in admissible form and could not be considered, and an affirmed report from Dr. Raghava Polavarapu, an

[* 4]

orthopedist who conducted an IME of the plaintiff on October 20, 2016 for defendants' insurer.

Dr. Wilen first treated plaintiff shortly after the accident. At the plaintiff's first exam on August 29, 2016, he noted reduced ranges of motion in the plaintiff's left shoulder, cervical spine, and lumbar spine. In his recent exam, conducted on August 5, 2023, he noted that "[p]hysical examination of the left shoulder shows a positive Neer and Hawkins impingement sign, tenderness in both the rotator cuff and biceps tendon. There is restriction in motion with forward elevation of 110 degrees (normal 0-180), abduction to 80 degrees (normal 0-180), internal rotation to 40 degrees (normal 0-40), external rotation to 20 degrees (normal 0- 90) with clicking and positive impingement sign and tenderness deep into the rotator cuff muscle." Upon examination of the plaintiff's cervical spine, he noted that "[t]he cervical spine shows spasms from C1 to C6, tenderness over the C6, C7 and T1 spinous processes. There is restriction in motion with flexion to 30 degrees (normal 0- 45), extension to 25 degrees (normal 0-45), lateral bending to the right to 15 degrees (normal 0- 45), lateral bending to the left to 20 degrees with 4/5 muscle strength in the cervical spine, 4/5 muscle strength in the upper extremities including the biceps, triceps and wrist flexors and extensors with +1 reflexes, decreased" [Doc 44].

Dr. Wilen also examined the plaintiff's lumbar spine and notes that "[t]he lumbar spine shows spasms from L1 to L5, tenderness over the L2, L3 and L4 spinous processes; spasms throughout the paravertebral muscles of the lumbar spine; decreased range of motion with flexion to 60 degrees (normal 0-90), extension to 20 degrees (normal 0-45); lateral bending to the right to 15 degrees (normal 0-45) and lateral bending to the left to 15 degrees with 4/5 muscle strength in the lumbar spine; 4/5 muscle strength in the lower extremities including the quadriceps, hamstrings, anterior tibialis, and extensor hallucis

[* 5]

bilaterally with +1 reflexes, decreased." Finally, Dr. Wilen opines that the plaintiff "has suffered permanent injuries as a result of this accident and will need physical therapy throughout her lifetime to the neck, back and left shoulder. She will need epidural injections to the cervical and lumbar spine in the future due to the significant herniation of the discs and compression of the nerve. She will also need cervical and lumbar fusion in the future due to the severity of the discs that were herniated in both the neck and back. She will need orthopedic follow-up on a quarterly basis, pain medications including anti-inflammatory medications, and possibly even narcotic medication if the pain worsens."

Dr. Mathew, plaintiff's treating physical medicine and rehabilitation doctor, offers seven narrative reports detailing his examinations of the plaintiff from the date of the plaintiff's initial visit, two days after the accident, on June 17, 2016 through May of 2017.

Plaintiff also provides a number of affirmed reports from Dr. Thomas S. Mathew. At the initial exam, Dr. Mathew noted reduced ranges of motion in the plaintiff's cervical spine, lumbar spine and both shoulders, when compared to "normals," and opines that "there is a causal relationship between the patient's injury on June 15, 2016 and the current symptoms." In the report dated May 31, 2017, Dr. Mathew notes that his exam of the plaintiff's cervical spine revealed that "some tenderness to palpation in the cervical paraspinal musculature. Range of motion revealed: Cervical flexion 45 degrees out of normal 50 degrees. Cervical extension 50 degrees out of normal 60 degrees. Bilateral rotation 73 out of normal 80 degrees. She had a negative Spurling's test bilaterally." His exam of the plaintiff's lumbar spine also revealed "tenderness to palpation in the lumbar paraspinal musculature" and range of motion testing revealed "Lumbar flexion 65 degrees out of normal 90 degrees. Lumbar extension 23 degrees out of normal 30 degrees. Bilateral side bending 30 degrees out of normal 40 degrees. She had a negative straight leg raise

[* 6]

bilaterally." Dr. Mathew also opines that "[a]t this point, as the patient has reached a plateau in regard to physical therapy for both the cervical and lumbar spines, I do believe the patient has reached maximal medical improvement and will discontinue physical therapy for these body parts at this time. The patient is encouraged to continue doing exercises as part of her home exercise program to help prevent exacerbations of the neck and back."

Plaintiff also offers the affirmed reports from Dr. David Payne, the radiologist who interpreted plaintiff's cervical and lumbar MRI films. In his affirmed report for the MRI of the cervical spine, Dr. Payne notes that there is a "[b]ulging disc at C4-5 with thecal sac impingement," a "[r]ight paracentral herniation at C5-6 with hemicord compression and impingement upon the position of the right C7 root," and a "[r]ight paracentral herniation at C6-7 with thecal sac indentation." In his review of the plaintiff's lumbar spine MRI, Dr. Payne notes a "[b]ulging disc at L2/3 without stenosis," a "[b]ulging disc at L3/4 without stenosis," a "[r]ight paracentral herniation at L4/5 with midline annular tear component, thecal sac indentation and impingement upon right L5 root," and a "[r]ight paracentral herniation at L5/S1 with impingement upon thecal sac and originating S1 roots."

The court finds that the plaintiff has overcome the motion and raised a triable issue of fact as to whether she sustained a "serious injury" as a result of the subject accident (*see Young Chan Kim v Hook*, 142 AD3d 551, 552 [2d Dept 2016]). Dr. Wilen opines that plaintiff has significant, quantified restrictions in her range of motion, both contemporaneously with the accident and recently. His opinion is supported by the reports of Dr. Mathew, who also notes that the plaintiff had significant, quantified restrictions in her range of motion contemporaneously with the accident. Further, Dr. Wilen opines as to the permanent nature of plaintiff's injuries and states that plaintiff's injuries were caused by the

[* 7]

subject accident.  Thus, the parties' doctors raise a "battle of the experts."  This is sufficient

to raise an issue of fact which requires a trial.

Accordingly, it is **ORDERED** that the motion is denied.

This constitutes the decision and order of the court.

Dated: December 29, 2023

**E N T E R :**

**Hon. Debra Silber, J.S.C.**

[* 8]